## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### (Louisville Division)

Edward Harpring
and Mary Kenney,                                    :
                                                    :
            Plaintiffs,          :          Case No. **3:21-cv-00691-RGJ**
                                                    :
v.                                                  :
                                                    :
                                                    :
Louisville/Jefferson County                         :
Metro Government,                                   :
                                                    :
            Defendant.           :

## VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiffs, Edward Harpring and Mary Kenney, through their undersigned counsel, bring this Complaint against Defendant, Louisville/Jefferson County Metro Government, and its agents, servants, successors, in office, employees, police, attorneys, and those acting in concert or participation with them, and allege as follows:

### RESIDENCIES OF THE PARTIES PER LR 8.1

1.      Plaintiffs, Edward Harpring (hereinafter, "Plaintiff Harpring" or "Harpring") and Mary Kenney (hereinafter, "Plaintiff Kenney" or "Kenney") are residents of Jefferson County, Kentucky. Defendant, Louisville/Jefferson County Metro Government (herein, "the City" or "Metro") operates principally within Jefferson County, Kentucky.

### INTRODUCTION

2.      This is a civil rights action brought under 42 U.S.C. § 1983 challenging the constitutionality, both on its face and as applied, of Louisville Ordinance No. O-179-21, as amended ("An Ordinance Amending the Louisville/Jefferson County Metro Code of Ordinances to Ensure

Safe, Unobstructed Entry to and Exit from a Healthcare Facility") (herein, "the Ordinance"), codified at Louisville Code of Ordinances § 132.09.

3.          Plaintiffs are both pro-life sidewalk counselors who engage in peaceful First Amendment-protected activities and expression in traditional public fora in the City of Louisville. For many years, both Plaintiffs have been active in speaking with and distributing pamphlets, handbills, and other literature to individuals using the services of the EMW Women's Surgical Center (hereinafter, "the clinic" or "EMW") located at 136 W. Market Street in Louisville, Kentucky, a place where abortions are performed.

4.          Pursuant to the terms of the Ordinance, Plaintiffs have been prohibited from entering, standing within, crossing through, and distributing literature within, a large section of public sidewalk—a traditional public forum for the exercise of First Amendment rights—that is located in front of the clinic.

5.          Both on its face and as applied to Plaintiffs, the Ordinance fails to meet the tests set forth by the United States Supreme Court in *McCullen v. Coakley*, 573 U.S. 464 (2014).

6.          Plaintiffs ask this Court to declare the Ordinance unconstitutional both on its face and as applied to them and seek a preliminary and permanent injunction against Defendant's enforcement of the Ordinance.

7.          Plaintiffs further seek an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

8.          This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367, and 42 U.S.C. § 1983.

9.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court.

10.     Venue is proper within this judicial district and division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and division.

## PARTIES

11.     Plaintiff, Edward Harpring, is an adult citizen of the United States and is a resident of Louisville, Kentucky.

12.     Plaintiff, Mary Kenney, is an adult citizen of the United States and is a resident of Louisville, Kentucky.

13.     Defendant, Louisville/Jefferson County Metro Government, is a consolidated local government created pursuant to KRS Chapter 67C, located in the Commonwealth of Kentucky, and as such has all powers and privileges as the government may exercise under the Constitution and laws of Kentucky including the capacity to sue and be sued. Ky. Rev. Stat. Ann. § 67C.101(2), and Ky. Rev. Stat. Ann. § 82.081.

14.     Defendant is responsible for creating, adopting, implementing, and enforcing its laws, ordinances, policies, practices, and/or customs, including those set forth in this Complaint, through its officers, agents, servants, successors in office, employees, police, attorneys, and those acting in concert or participation with them.

15.     At all times relevant to this action, Defendant was, and is, a "person" acting under "color of state law" as those terms are used in 42 U.S.C. § 1983.

**FACTUAL ALLEGATIONS**

*Plaintiffs' Sidewalk Counseling*

16.     A public sidewalk runs parallel to 136 W. Market Street, Louisville, in front of the EMW abortion clinic and adjacent properties. An entrance/exit door is located in a portion of the premises occupied by the abortion clinic abutting the public sidewalk.

17.     Patients seeking abortions at the clinic may be dropped off at the curb along W. Market Street or may park in a parking lot in the vicinity and walk along the public sidewalks to the entrance.

18.     In order to enter the clinic, patients must walk on the public sidewalk in front of the facility.

19.     Plaintiffs are individuals who have deeply held religious beliefs that abortion takes the life of an innocent human being and is harmful to mothers.

20.     Plaintiffs are compelled by their consciences to try to speak with, and offer assistance to, women seeking abortions at the EMW clinic, a form of "sidewalk counseling" identical to that described by the Supreme Court in *McCullen v. Coakley*, 573 U.S. 464 (2014).

21.     For the past 37 years and 15 years respectively, Harpring and Kenney have regularly used the public sidewalk in front of EMW to pray, and to speak with individuals heading to or from the abortion clinic. Plaintiffs try to offer those individuals words of quiet compassion, empathy, and consolation, and try to hand them pamphlets and other literature regarding alternatives to abortion.

22.     As sidewalk counselors, it is Plaintiffs' practice to walk alongside women seeking abortions, and—in a quiet, compassionate, non-threatening one-on-one conversation—try to convince them that there are lifesaving alternatives, and that Plaintiffs and others will accompany the woman in whatever way she may need.

4

23.     Plaintiff Harpring estimates that, prior to the enactment of the Ordinance, around 50-60 times a year, his efforts (and those of other sidewalk counselors) have succeeded in persuading women to choose alternatives to abortion in the last few feet before they enter the clinic.

24.     Harpring specifically recalls one patient with whom he was walking and speaking right up to the area in front of the clinic door—an area that now falls within the boundaries of the buffer zone created by the Ordinance—who, shortly after entering EMW, came back out and told him that the last thing he had said to her caused her to change her mind about going through with an abortion.

25.     Plaintiffs are not present in front of the Clinic to "protest" or "demonstrate" in any way. Indeed, Plaintiffs believe that such conduct or activity would be detrimental to their goals.

26.     While using the public sidewalk in front of the Clinic, Plaintiffs do not block or obstruct pedestrians using the sidewalk or obstruct entrance to, or exit from, EMW.

### The Ordinance

27.     In May 2021, the City passed Ordinance No. O-179-21, which was signed by the Mayor on June 2, 2021. (A copy of the Ordinance is attached hereto as Exhibit A.)

28.     The face of the Ordinance contains a series of recitals which set forth the alleged reasons for the Ordinance. The recitals specifically mention only one healthcare facility—EMW—and detail a history of "obstruction, trespassing, assault and stalking," along with law enforcement's responses to said activity. The recitals also claim that the buffer zones being created by the Ordinance are justified under the holding of *Hill v. Colorado,* 530 U.S. 703 (2000). (No reference is made to *McCullen.*) See Exhibit A.

29.     The Ordinance then creates "buffer zones" in front of literally dozens of "healthcare facilities" in Louisville Metro prohibiting non-exempt persons to "enter, remain on, or create any obstruction within a 'buffer zone' or the public sidewalk extending from the facility's entrance to the

5

closest adjacent sidewalk curb and "10 feet from side to side" during the facility's posted business hours. See Exhibit A, Section (B).

30.     Four classes of persons are exempt: (a) persons entering or leaving the facility; (b) persons using the sidewalk to reach "a destination other than such facility"; (c) first responders, construction, utilities, public works and other municipal agents; (d) employees or agents of the facility. See Exhibit A, Section (B)(2).

31.     Separately, the Ordinance ("Section C Signage") permits a healthcare facility to request the Department of Public Works to paint demarcation lines on the public sidewalk showing the boundaries of the buffer zones along with signs reading "Healthcare facility. No standing within this zone. [Metro Ordinance.]" See Exhibit A.

32.     The aforementioned section of the Ordinance, states, *inter alia,* that the Department of Public Works "shall, at the request of a healthcare facility," paint demarcation lines indicating the boundaries of the buffer zone. Neither Section (C) nor any other part of the Ordinance contains any standards for the grant or denial of any such requests; it is simply mandatory upon request of a healthcare facility. See Exhibit A.

33.     The Ordinance (Section D) also provides that within two years of the enactment of the Ordinance the Department of Public Works is to solicit from any healthcare facility requesting the painted lines information regarding the "efficacy" of the buffer zones and to make and submit a report to Metro Council summarizing that information.

34.     Section E of the Ordinance provides that healthcare facilities are to "monitor" the zones and document instances where (non-exempt, presumably) individuals or groups "create an obstruction" in the buffer zone, or "are otherwise present in the buffer zone. This documentation is to be provided to the City's Department of Public Works, the Department of Public Health and Wellness, and the Louisville Metro Police Department ("LMPD") every six months.

35.     Persons who violate the Ordinance by entering, remaining in, or creating an obstruction within a buffer zone are subject to a written warning, and upon failure to comply, a citation. Convictions for violating the Ordinance carry with them fines varying from $150 to $500. See Exhibit A.

36.     Finally, the provisions of the Ordinance are declared to be severable. See Exhibit A.

37.     Shortly after the promulgation of the Ordinance in June 2021, a set of lines 10 feet apart were painted by Metro on the public sidewalk leading from the curb at 136 W. Market Street to the entrance to EMW:



38.     On or about October 12, 2021, two signs were posted in front of EMW. The signs read: "Healthcare Facility: No Standing or Obstructions In This Zone – LMCO §132.09." The signs are not at the edge of the buffer zone but approximately 30 feet to the right and 30 feet to the left of the marked buffer zone:



*Effects on Plaintiffs' Sidewalk Counseling*

39.     The creation by the Ordinance of the speech-free zone in front of the clinic has had a devastating effect on Plaintiffs' ability to engage in sidewalk counseling.

40.     The buffer zone eliminates Plaintiffs' former ability to accompany patients to the area in front of the entrance of EMW, preventing them and other counselors from their formerly more successful ability to persuade women to reconsider at the last moment before entering.

41.     The Ordinance prohibits Plaintiffs from entering the buffer zone in order to reach patients coming from the other side of the zone without going into Market Street, one of Louisville's busiest thoroughfares.

42.     Since the adoption of the buffer zone, Plaintiffs have observed, on numerous occasions, that patients have been met by EMW volunteer clinic escorts in marked "clinic shuttle" vehicles at nearby locations, then driven to and dropped off at the curb where the buffer zone begins. On those occasions, escorts now flank patients on both sides while they are walking through the area created by the buffer zone lines. When Plaintiffs have attempted to pass to such patients their handbills or pamphlets, the escorts physically prevent Plaintiffs from doing so, often by striking and blocking Plaintiffs' hands. In addition, clinic escorts frequently grab Plaintiffs' pamphlets themselves, often tearing them up, to prevent patients from receiving and reading them.

8

43.     Plaintiff Kenney has observed this practice of EMW's agents picking up women at a remote location and dropping them off at the entrance to the buffer zone on approximately 25 occasions. She believes that the frequency of this new practice is increasing. Plaintiff Harpring estimates that 75% of the EMW patients now arrive at the clinic in this manner and are, thus, now physically beyond Plaintiffs' reach for sidewalk counseling and pamphleteering. Plaintiffs can no longer walk alongside patients and try to initiate quiet, personal, caring conversations about abortion alternatives

44.     When women are dropped off at the front of the buffer zone, Plaintiffs' ability to interact with them in a personal, caring, and compassionate way is effectively eliminated. Plaintiffs are now forced to either enter the street to try to hand them pamphlets and converse with them or hover over the vehicles dropping off women in a manner contrary to Plaintiffs' longstanding and preferred manner of sidewalk counseling. On at least one occasion, Plaintiff Kenney has been warned by an LMPD officer that by going into the street and trying to speak with people getting out of their vehicles she is engaging in "harassment."

45.     In addition, the buffer zone forces sidewalk counselors to raise their voices (eliminating the desired quiet, conversational approach) and effectively eliminates the opportunity to make a person-to-person connection with women and their companions entering the EMW facility.

### *Uncertainty about the Ordinance's Meaning and Scope*

46.     Notwithstanding that Section B expressly forbids any non-exempt person to "enter" the buffer zones created thereunder, Plaintiffs have been informed by one LMPD officer that they are permitted to walk through the buffer zone at EMW. Plaintiffs have, at times, conducted themselves accordingly while on other occasions avoiding walking through the zone.

47.     However, on November 9, 2021, Plaintiff Kenney received from LMPD a "Written Warning" issued pursuant to the Ordinance's "Section (F) Penalties." (Attached hereto as Exhibit B.)

48.     The Written Warning states that it is being issued for Kenney's alleged "Violation of LMCO 132.09." The conduct allegedly constituting the violation is described, in its entirety, as follows: "Clinic at 136 W. Market provided security footage from 10/22/21 at 0813 which shows listed subject walk through buffer zone twice in the span of about 20 seconds and was considered a violation of BZO by the County Attorney's Office when they reviewed the footage."

49.     The face of the Ordinance itself prohibits different actions in its different sections. Section B forbids non-exempt persons to "enter, remain on, or create any obstruction within . . . a "buffer zone.'" Section C, on the other hand, directs that the signs set up thereunder inform the public only that "standing" within the zone is prohibited. Section E, however, requires healthcare facilities to monitor, document, and report to three different city agencies instances where non-exempt individuals "create an obstruction" in a buffer zone, or are simply "present" in the buffer zone.

50.     In addition, Plaintiffs have observed that the placement of the signs some 30 feet (approximately) to either side of the actual buffer zone has caused confusion for other sidewalk counselors unfamiliar with the EMW site. Plaintiff Kenney has had a conversation with one or more members of a group called "40 Days for Life" who expressed uncertainty about where the zone begins and ends due to the placement of the signs.

51.     On all other occasions, however, even without the interference of the clinic escorts or the practice of shuttling patients to the entrance to the buffer zone, the buffer zone's 10-foot width prevents Plaintiffs from being able to speak quietly to patients and to hand them their literature.

## LEGAL ALLEGATIONS

52.     The Ordinance alleged herein is enforced or enforceable by Defendant, including its agents, servants, employees, police, attorneys, and those acting in concert or participation with them, under the color and pretense of the laws and policies of the City.

53.     The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.

54.     Public streets and sidewalks are traditional public forums for speech on matters of public concern and hold a special position in terms of First Amendment protection.

55.     Under controlling Supreme Court precedent, "sidewalk counseling" of the kind engaged in by Plaintiffs is not protesting or demonstrating and enjoys the highest level of protection, akin to other forms of speech and pamphleteering.

56.     Plaintiffs' peaceful, non-disruptive speech and literature distribution are fully protected by the First Amendment to the United States Constitution.

57.     The fact that certain messages may be offensive to some of their recipients does not deprive them of constitutional protection.

58.     The right to receive information is guaranteed by the First Amendment to the United States Constitution.

59.     The Ordinance infringes the rights of willing recipients to receive literature and oral communications and therefore violates the First Amendment to the United States Constitution.

60.     The Ordinance chills and deters fundamental constitutional rights of Plaintiffs and third parties.

61.     Plaintiffs have no plain, adequate, or complete remedy to redress the constitutional injuries described in this Complaint other than by filing this action.

## FIRST CLAIM FOR RELIEF
### First Amendment: Free Speech

62.      Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 61 above and incorporates them by reference herein.

63.      The public ways and sidewalks that fall under the Ordinance's provisions are traditional public forums

64.      The Ordinance is overbroad on its face and as applied because it prohibits speech and expressive activities of Plaintiffs and third parties not before the court in the restricted areas.

65.      The Ordinance is overbroad on its face and as applied because it prohibits entering or remaining on a public way or sidewalk adjacent to a healthcare facility.

66.      Because the Ordinance is an unconstitutionally overbroad restriction on expressive activity, the Ordinance restricts more speech than necessary to achieve any governmental interest.

67.      The Ordinance is an unconstitutional content- and viewpoint-based restriction in that it was enacted, and is applied, so as to restrict pro-life speech.

68.      The Ordinance creates an impermissible risk of discriminatory enforcement against Plaintiffs because the City intends to restrict Plaintiffs' pro-life speech within buffer zones while at the same time permitting abortion clinic employees and volunteers to engage in pro-abortion speech.

69.      Assuming a buffer zone is only operative when it has been marked out by the Department of Public Works at the request of a healthcare facility, the Ordinance imposes an unconstitutional content- and viewpoint-based restriction in that it impermissibly delegates to private healthcare facilities, pursuant to unbridled discretion, the power to suppress free speech activities in traditional public forums based on the content and/or viewpoint of speech they do not like.

70.     The Ordinance's ban on free speech activities in the public way and sidewalk area outside healthcare facilities imposes an unconstitutional restriction on constitutionally protected speech in traditional public forums.

71.     No compelling, substantial, or even legitimate governmental interest exists to justify the Ordinance's restrictions on speech in traditional public forums.

72.     The Ordinance is not the least restrictive means to accomplish any permissible purpose sought to be served by the City, and the Ordinance restricts substantially more speech than necessary.

73.     The Ordinance is not narrowly tailored to the City's asserted interests in public health, safety, and welfare.

74.     Plaintiffs' effective communication of their messages, including the distribution of literature, requires personal approaches to people entering the EMW clinic, and the Ordinance greatly hinders, and in many circumstances completely forecloses, this method of communication.

75.     The Ordinance on its face and as applied violates Plaintiffs' rights to freedom of speech under the First Amendment to the United States Constitution.

76.     As a direct and proximate result of the enactment of the Ordinance under color of state law, Plaintiffs have been deprived of a clearly established constitutional right guaranteed by the First Amendment to the United States Constitution as protected by 42 U.S.C. § 1983.

77.     Wherefore, Plaintiffs respectfully request the relief set forth below.

## SECOND CLAIM FOR RELIEF
### Fourteenth Amendment: Due Process

78.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 77 above and incorporates them by reference herein.

79.     The Ordinance is an unconstitutionally vague restriction on speech on its face and as applied because it fails to adequately advise, notify, or inform persons subject to prosecution under the Ordinance of its requirements.

80.     The Ordinance is unconstitutionally vague because it lacks any standards or criteria to guide those charged with enforcing it and thus gives them unbridled discretion to determine what speech activities are, and are not, permissible within the zones created by the Ordinance.

81.     The Ordinance is unconstitutionally vague because it lacks any standards or criteria and gives private entities, *i.e.*, healthcare facilities, unbridled discretion to impose no-speech zones under the Ordinance.

82.     The words of the Ordinance, excluding from its reach "persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility," are impermissibly vague.

83.     The Ordinance does not give fair notice to Plaintiffs, third parties, or law enforcement officials whether someone can enter and remain in a buffer zone when their destination is not the healthcare facility adjacent to a buffer zone, but the public sidewalk in front of the facility. According to the Ordinance, the definition of "healthcare facility" includes its buildings, grounds, driveways, and parking lots, but the not public sidewalk adjacent to such facilities.

84.     The Ordinance does not give fair notice to Plaintiffs, similarly situated persons, or law enforcement officials, whether they are permitted to walk through the buffer zone in front of EMW to continue sidewalk counseling on the other side.

85.     Nothing in the Ordinance provides that a buffer zone is only operative when a zone has been created by the Department of Public Works at the request of a healthcare facility. To the contrary, the plain language of the Ordinance provides that buffer zones now exist "on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk

curb and ten feet from side to side, during the facility's posted business hours." While a healthcare facility may request the Department of Public Works to "paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines running from either side of the facility entrance to the closest adjacent sidewalk curb and extending ten feet from each other," nothing in the Ordinance states that the buffer zones are only operative after the Department of Public Works has done so.

86.     The Ordinance provides that healthcare facilities shall post signage regarding the existence of a buffer zone, but it does not indicate where that signage should be located. In the case of EMW, signs have been posted approximately 30 feet away from either side of the actual buffer zone giving a reasonable person the false impression that the buffer zone begins where the signs have been posted.

87.     The Ordinance provides that "Healthcare facilities shall post . . . signage stating: 'Healthcare facility: No standing within this zone. [Metro Ordinance].'" But the Ordinance prohibits more than standing within a buffer zone. If the purpose of the signage is to indicate to passersby what they cannot do within a buffer zone, the required sign does not give fair notice of what would constitute illegal conduct within the buffer zone.

88.     The Ordinance is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against the arbitrary and discriminatory suppression of First Amendment rights.

89.     As a direct and proximate result of the enactment of the Ordinance under color of state law, Plaintiffs have been deprived of a clearly established constitutional right guaranteed by the Fourteenth Amendment to the United States Constitution as protected by 42 U.S.C. § 1983.

90.     Wherefore, Plaintiffs respectfully request the relief set forth below.

## PRAYER FOR RELIEF

91.      Plaintiffs repeat and re-allege all allegations made above and incorporates those allegations herein by reference, and Plaintiffs respectfully ask that this Court grant them the following relief and enter final judgment against Defendant:

A.      Declare that Defendant's Ordinance No. O-179-21 (codified at Louisville Code of Ordinances § 132.09) is unconstitutional on its face;

B.      Declare that Defendant's Ordinance No. O-179-21 (codified at Louisville Code of Ordinances § 132.09) is unconstitutional as applied to Plaintiffs' expressive activities on the public sidewalk located outside the EMW abortion clinic located at 136 W. Market Street in Louisville, Kentucky;

C.      Preliminarily and Permanently enjoin Defendant, its agents, servants, employees, police, attorneys, and those acting in concert or participation with them, from enforcing Ordinance No. O-179-21 (codified at Louisville Code of Ordinances § 132.09);

D.      Award reasonable attorneys' fees and costs associated with this action, pursuant to 42 U.S.C. § 1988; and

G.      Award other relief that this Court deems equitable and just.

Respectfully submitted on this 16th day of November, 2021.

s/ Francis J. Manion
Francis J. Manion
Geoffrey R. Surtees
American Center for Law & Justice
Post Office Box 60
New Hope, Kentucky 40052
Tel. 502-549-7020; Fax 502-549-5252
fmanion@aclj.org; gsurtees@aclj.org
*Counsel for Plaintiffs*

16

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on November 16, 2021.

*s/ Edward Harpring*
EDWARD HARPRING

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on November 16, 2021.

*s/ Mary Kenney*
MARY KENNEY