**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY (at Louisville)**
*Electronically Filed*

**EDWARD HARPRING &**
**MARY KENNEY**                                            **Plaintiffs**

**v.**                                            **Case No. 3:21-cv-00691-RGJ**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT**                                            **Defendant**

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Defendant, Louisville/Jefferson County Metro Government ("Metro Government"), by counsel, for its Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. 5) related to Metro Government's action in the passing and enforcing of Metro Ordinance O-179-21, now codified as Louisville Metro Code of Ordinances ("LMCO") §132.09 ("the Ordinance") states this Ordinance is narrowly tailored and intended to ensure safe, unobstructed entry to and exit from a healthcare facility. Because Plaintiffs are not entitled to their requested relief under the law, Plaintiffs' Motion for a Preliminary Injunction should be denied.

### I. INTRODUCTION

Plaintiffs, Edward Harpring and Mary Kenney (collectively "Plaintiffs"), have moved for a preliminary injunction seeking relief from alleged violations of their First and Fourteenth Amendment Rights due to the subject Ordinance that allows healthcare facilities to create small, 10-foot buffer zones outside of their entrance to ensure patients can enter and exit the facility safely. Plaintiffs allege that they seek to walk alongside patients entering healthcare facilities and offer words of compassion to them inside of the buffer zone. (*See* Dkt. 5-1, Plaintiffs' Memorandum in Support of a Preliminary Injunction (hereinafter "Pls' Memorandum") at p. 3).

1

The Ordinance prevents Plaintiffs from walking directly next to patients within a ten-foot demarcated buffer zone outside of a facility's entrance. Plaintiffs seeks to enjoin Metro Government and "its officers, agents, servants, successors in office, employees, police, prosecutors, attorneys, and those acting in convert or participation with them" from enforcing the Ordinance (*See* Plaintiffs' Proposed Order).

Plaintiffs cannot satisfy the rigid requirements necessary for injunctive relief and are not likely to succeed on the merits because courts have long recognized the constitutionality of buffer zones,  including buffer zone outside of healthcare facilities, when there is a significant and legitimate government interest and the ordinance is narrowly tailored to not overburden more speech than necessary.

Here, the Ordinance was passed by Louisville/Jefferson County Metro Council on May 20, 2021 because that legislative body determined that there was a significant and legitimate need for buffer zones outside of healthcare facilities. The application of the Ordinance does not violate Plaintiffs' free speech because the Ordinance, with a modest buffer zone, burdens as little speech as necessary to serve the government interests. The Ordinance also does not violate Plaintiffs' due process rights because the Ordinance is not vague. The Ordinance is narrowly tailored to achieve a significant and legitimate government interest in protecting its citizens without violation of alleged competing rights.

Moreover, preliminary injunctions are extraordinary and drastic remedies. Plaintiffs have failed to carry their burden of justifying such relief by failing to show any irreparable harm caused to them, and the other elements required for injunctive relief are not present. The balance of harm and public interest weighs in favor of denying Plaintiffs' preliminary injunctive relief.

## II. HISTORY OF ORDINANCE

Louisville/Jefferson County has had a long history of anti-abortion protests and sidewalk counseling. The protests outside of the EMW Women's Surgical Center ("EMW Center") are distinct because the EMW Center is one of the only clinics in Kentucky that provides abortion services.[1] Because it is one of the only providers, the clinic consistently has presence from out of town protestors as well as local protestors. The protestors, and some self-proclaimed sidewalk counselors, regularly harass, stalk, intimidate and assault patients entering and exiting the clinic. Monthly reports from the EMW Center indicate that just between January 2021 and March 2021, there have been a total of at least 1,447 reported protestors outside of the EMW Center with about 23 protestors on any given day. *See* 2021 NAF Monthly Reports attached as **Exhibit A.**

These reports indicate a pattern of obstruction, trespassing, assault and stalking and demonstrate the frequency in which the Louisville Metro Police Department ("LMPD") is contacted. *See* **Exhibit A**. Video evidence from March 6, 2021 shows a protestor grabbing a patient and dragging them away from the healthcare facility entrance. See link to Video Evidence, https://drive.google.com/file/d/1S8oM1gYCUfRBdTcnvaVEXIKVWz7ZfMdP/view. **Exhibit B**. This video evidence also shows patients being stalked, harassed, touched and intimidated by protestors and some sidewalk counselors. *Id*. These are not one-off occurrences. These are occurrences that happen on a regular basis outside of the clinic.

Additionally, a study of nine (9) reproductive health clinics in Ohio, Kentucky and West Virginia conducted by the Ohio Policy Evaluation Network (OPEN) found that more than 50% of patients from the EMW Center reported protestors as a challenge to receiving healthcare; this is three times the average for the other eight clinics combined. *See* OPEN study, attached as **Exhibit C**. Testimony from certified anesthesiologist Margorie Fitzgerald on April 28, 2021,

---

[1] Planned Parenthood in Louisville recently became Kentucky's second clinic authorized to provide abortion services.

discussed the effects of these protestors on patients' vital signs revealing that EMW patients routinely have "abnormal vital signs" and their blood pressure and heart rates are "that seen in a patient having a panic attack" which would "add risk to a medical procedure." *See* Margorie Fitzgerald testimony attached as **Exhibit D**.

Before enforcement of the Ordinance, there were numerous citations, reports and arrests that occurred outside of the EMW Clinic ranging from destroying property to harassment/intimidation and criminal trespassing. In fact, a self-proclaimed sidewalk counselor is currently facing prosecution for criminal trespassing because the counselor physically entered the EMW Clinic and refused to leave. Moreover, there would be many more arrests and prosecutions, but victims/patients do not want to file complaints due to various reasons including retaliation.

Due to the level of activity outside of the EMW Clinic, before the subject Ordinance was enacted there was a need for constant police presence. However, Metro Government has limited resources it can devote to monitoring the clinic which also leads to less arrests/prosecutions. Additionally, memorandum from LMPD indicates that when incidents outside of the EMW Center occur, officers are required to make judgment calls on whether enforcing existing ordinances or laws would violate the protestor's First Amendment rights. *See* LMPD Memorandum from March 24, 2021 attached as **Exhibit E**.

The Ordinance was passed because Metro Council determined, after hearing and seeing all of the evidence[2], that a legitimate and significant government interest existed to protect patients entering and exiting healthcare facilities in Louisville, KY. Further, Metro Council

---

[2] Exhibits A-F are part of the legislative record for O-179-21 are just the tip of the iceberg of evidence that proves the significant government interest. A District Court is entitled to take judicial notice of legislative records that are also public records. Sensations, Inc. v. City of Grand Rapids, No. 1:06-CV-300, 2006 WL 5779504 at *3 (W.D. Mich. Oct. 23, 2006), aff'd, 526 F.3d 291 (6th Cir. 2008) (listing cases).

determined that the current laws were not effective or practical in serving this interest and that a small, 10-foot buffer zone did not burden substantially more speech than necessary to further the government's interest.

### III. COUNTERSTATEMENT OF FACTS

Louisville/Jefferson County Metro Council ("Metro Council") passed Ordinance O-179-21 on May 20, 2021. *See* O-179-21, a copy which is attached as **Exhibit F.** The Ordinance states in relevant part that:

"No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a 'buffer zone' on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, during the facility's posted business hours, except:

   (a)   persons entering or leaving such facility;

   (b)   persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility; or

   (c)   law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; or

   (d)   employees or agents of such facility acting within the scope of their employment."

Entrance is defined as

[A]ny door to a healthcare facility that directly abuts the public sidewalk; provided, however, that if the door does not directly abut the public sidewalk the

'entrance' shall be the point at which the public sidewalk intersects with a

pathway leading to the door."

Further, the Ordinance, in summary, states:

1.  Section (B)(2) of the Ordinance prohibits a person from knowingly entering, remaining on or creating any obstruction within a buffer zone. However, a buffer zone is created via Section (C) which states "[t]he Department of Public Works shall, **at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…" (emphasis added).

2.  Section (D) states "the Louisville Department of Public Health and Wellness shall solicit information from any health care facility **that requested the demarcation line as described in this section regarding the efficacy of the "buffer" zone** in allowing patients and staff to enter and exit the facility safely." (emphasis added).

3.  Section (E) states "Any health care facility that **requests that the Louisville Department of Public Works paint or lay demarcation lines** as described in subsection (C)(1), shall monitor during its hours of operation **the "buffer" zone created by the demarcation lines**…" (emphasis added).

The buffer zone created by the Ordinance is one of the smallest buffer zones that currently exists in the United States. It only extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb. Moreover, the Ordinance mandates that a healthcare facility *request* the demarcation of a buffer zone by Louisville Metro Department of Public Works ("Public Works"). *See* O-179-21, **Exhibit F** ("The Department of Public Works shall, **at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…")) A buffer zone is not

created automatically, nor can a healthcare facility create a buffer zone themselves. It must be requested through Public Works.

As mentioned, the Louisville/Jefferson County has a long history of anti-abortion protests. Over the years, the LMPD has made numerous reports, citations and arrests outside of the EMW Clinic. However, many of the existing laws and ordinance are ineffective or impractical in resolving the issues occurring outside of the EMW clinic. Victims/patients rarely file complaints for various reasons, including fear of retaliation. Victims/patients many times face retaliation by protestors and sidewalk counselors once their identity becomes known such as calls to their family members and even clergy. Thus, victims are reluctant to have their information become public record by filing complaints.

Additionally, the existing criminal statutes for harassment, disorderly conduct and failure to disperse are unavailing from a practical standpoint because victims/patients do not file complaints. Therefore, arrests and prosecution for these crimes requires constant police presence outside of the EMW clinic which is impossible de to limited resources of LMPD and the rise of violent crimes across the city.  With regards to the existing ordinances, the perpetrators leave or act on their best behavior in the presence of police, thus it is difficult for the officers to make arrests or cite people without being constantly present.

The Ordinance takes some of this burden from LMPD by requiring the healthcare facility to monitor their own "buffer zone" pursuant to Section E which states:

> *Monitoring and documentation*. Any healthcare facility that requests the Louisville Department of Public Works paint or lay demarcation lines as described in subsection (C)(1), **shall monitor during its hours of operation the "buffer" zone created by the demarcation lines for obstructions created by individuals or groups to allow patients and/or staff to enter and exit the facility safely.** (emphasis added).

7

Further, the ordinance requires LMPD, or any law enforcement officer, to issue one written warning before issuing a citation for violation of the Ordinance. *See* LMCO 132.09(F)(1). Because the Ordinance is set up this way, the healthcare facility is able to assist LMPD officers with issuing written warnings because LMPD is not required to physically witness the violation of the Ordinance in order to issue a warning and may issue the warning based on video evidence provided by the healthcare facility. LMPD is still required to physically witness violations of the Ordinance in order to issue citations, but with the help of the clinic and the warning requirements, LMPD is not required to be continuously physically present at the healthcare facility.

Regardless of whether Metro Government relies on decisions in *McCullen v. Coakley*, 573 U.S. 464 (2014) or *Hill v. Colorado*, 530 U.S. 703 (2000), the Ordinance is constitutional. The Ordinance creates one of the smallest buffer zones in the Unites States and **burdens very minimal speech** while protecting citizens by ensuring safe access to healthcare. The Ordinance also aids law enforcement officers with a bright-line rule to ensure patients <u>and speech</u> are protected while removing some of the burden from LMPD.

The Ordinance as applied creates a buffer zone that only extends five feet in each direction from the entrance of a healthcare facility. Thus, if a patient is walking directly in the middle of the buffer zone, Plaintiffs would be, at most, five feet away from the patient. *See* **Exhibit G**, photo of buffer zone. Certainly, Plaintiffs can be seen, heard and distribute pamphlets from five feet away and even ten feet away. *See* **Exhibit G**. Plaintiffs allege an absolute right to "counsel" in a person's face as they enter a

healthcare facility. This right does not exist and any burden on Plaintiffs' speech is minimal.

### IV. APPLICABLE STANDARD OF REVIEW

In determining whether a preliminary injunction should be issued, a district court must balance four factors:

> "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."

*See American Civil Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)).

But in First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.'" *Livingston County*, 796 F.3d at 642 (citing and quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644,649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id.* (quoting *Hamilton's Bogarts*, 501 F.3d at 649); see *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, ---- U.S. ----, 135 S. Ct. 950, 190 L.Ed.2d 831 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Livingston County*, 796 F.3d at 642 (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012))."

In addition, "preliminary injunctions are extraordinary and drastic remedies … never awarded as of right." *Livingston County*, 796 F.3d at 642 (quoting *Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447, 453 (6th Cir. 2014)). The party seeking a preliminary injunction bears the burden of justifying such relief." *Id.* (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012))."

## V. ARGUMENT

1. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

**A. The Ordinance is Narrowly Tailored Pursuant to *McCullen v. Coakley* and *Hill v. Colorado***

A content-neutral time, place and manner regulation must be "'narrowly tailored to serve a significant governmental interest.'" *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)). Such a regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests" to be narrowly tailored Id. (quoting Ward, 491 U.S. at 798). It just cannot "'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id*. (quoting *Ward*, 491 U.S. at 799).

The Ordinance adopted by Metro Government is remarkably different than the 35-foot buffer zone invalidated in *McCullen v. Coakley*, 573 U.S. 464 (2014) and has an extremely different impact on sidewalk counselors like Plaintiffs who seek to communicate with patients in normal, conversational tones and distribute literature.

In *McCullen*, the Massachusetts Legislature, in 2000, enacted a law which "established a defined area with an 18-foot radius around the around the entrances and driveways" of healthcare facilities. *See Id.* at 470. Once a person entered the defined area

"no one (other than exempt individuals) could knowingly approach within six feet another person." *Id*. The statute was modeled on a similar Colorado law that Supreme Court upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). *Id*.

However, in 2007, the *McCullen* Court noted that Massachusetts Legislature amended the law, "replacing the six-foot no approach zones (within the 18-foot area) with a 35-foot fixed buffer zone." *Id*. It is the 35-foot buffer before the Supreme Court in *McCullen*, not the original, smaller buffer zone similar to the one upheld in *Hill v. Colorado* and to the buffer zone created by the Ordinance. The record in *McCullen* shows that sidewalk counselors were not affected by the small buffer zone created by the 2000 law. In fact, Plaintiff *McCullen*, a self-proclaimed sidewalk counselor, stated that "since the 2007 amendment […] she reaches 'far fewer people' than she did before the amendment." *Id*. at 487. "She estimated having about 100 successful interactions over the years before the amendment." *Id*.

It is clear that it is the size of the 35-foot buffer zone that is at issue in *McCullen* because it carves out "a significant portion of the adjacent public sidewalks, pushing petitioners well back from the clinics' entrances and driveways." *Id*. Because of the size, sidewalk counselors "cannot distinguish patients from passersby," are reduced to raising their voices and have difficulties distributing literature *Id*. at 487-88.

Similar to the sidewalk counselors' testimony in *McCullen*, the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000) found that an 8-foot radius[3] buffer zone outside of healthcare facilities left ample room to communicate a message through speech with little

---

[3] The statute in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.

interference on that speaker's ability to communicate. *Id*. at 729-730 ("Signs, pictures, and voice itself can cross an 8–foot gap with ease.") ("[D]emonstrators with leaflets might easily stand on the sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by").

The *Hill* Court also found that providing bright-line rules, like buffer zones, to enforcement authorities "serve the interest in evenhanded application of the law" and are "unquestionably legitimate" interests. *Id*. at 715. The *Hill* Court further held that "[a] bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself." *Id*. at 729.

Here, the buffer zone created by the Ordinance is distinguishable from the buffer zone in *McCullen* and is more akin, if not less restrictive, than the buffer zone upheld in Hill, 503 U.S. 730. Again, the buffer zone does not need to be the least restrictive means, it just cannot burden more speech than necessary to further the government's interest. *McCullen*, 573 U.S. at 486. The Ordinance creates a small buffer zone, smaller than the one upheld in *Hill*, and given the relatively little impact of the ten-foot buffer zone on Plaintiffs, the buffer zone does not more substantially burden Plaintiffs than other alternatives.

Plaintiffs argue that Metro Government has failed to attempt other, less restrictive means of providing safe passage for patients entering and exiting healthcare facilities. *See* Dkt. 5, Pls' Memorandum pp. 12-13. Plaintiffs suggest that Metro Government should issue injunctions or use existing laws to serve the government's interest. However, as

12

previously mentioned, victims/patients do not file complaints and there are limited resources to devote to constant monitoring. Further, issuing injunctions or requiring protestors to disperse from the area **burdens more speech** than the small, 10-foot buffer zone which allows protestors and sidewalk counselors to stand five feet from patients. (emphasis added). *See* **Exhibit G**, photo of buffer zone.

Moreover, many states are creating narrowly tailored buffer zones around healthcare and reproductive facilities that are being upheld by Federal courts. Most recently and notably, the Third Circuit upheld an almost identical buffer zone ordinance in New Jersey. *See Turco v. City of Englewood, New Jersey*, 935 F.3d 155 (3d Cir. 2019). *See* City of Englewood Code §307-3 attached as **Exhibit H**. Buffer zones in Pennsylvania and Chicago were also recently upheld by the Third and Seventh Circuits, and on July 2, 2020, the U.S. Supreme Court denied certiorari in both cases, leaving the statutes in full effect. *See Bruni v. City of Pittsburgh*, 941 F.3d 73 (3d Cir. 2019), cert. denied, 141 S.Ct. 578 (2021) (upheld 15-foot buffer zone ordinance); *Price*, 915 F.3d 1107, cert. denied, 141 S.Ct. 185 (2020) (upheld eight-foot buffer bubble zone ordinance).

Plaintiffs also argue that the Ordinance is not narrowly tailored under *McCullen* because although "the detailed supporting evidence, statistics and anecdotes about the problem the Council seeks to address concern just one healthcare facility: EMW," the Ordinance creates buffer zones outside of all healthcare facilities. *See* Dkt. 5, Pls' Memorandum pp. 17-18.

Despite Plaintiffs' allegations, the Ordinance, as previously argued above, does not automatically create buffer zones outside of all healthcare facilities. The language is clear. See LMCO 132.09(E) ("the "buffer" zone created by the demarcation lines…"). Further, solely because the main issues are occurring outside of one clinic does not render

the Ordinance unconstitutional. In *Hill v Colorado*, the sidewalk counselors argued that the buffer zone law was overbroad and unconstitutional because "it protects too many people in too many places, rather than just the patients at the facilities where confrontational speech had occurred." 530 U.S. 703 at 730. In response to that argument, the Supreme Court in *Hill* held:

> "the fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance. What is important is that all persons entering or leaving health care facilities share the interests served by the statute."

*Id*. at 730-731.

The *Hill* court further held that "the comprehensiveness of the statute [to be] a virtue, not a vice, because it is evidence against there being discriminatory governmental motive." Id. at 731.

Further, Plaintiffs rely on one sentence from the entire *McCullen* opinion: "[f]or a problem shown to arise only once a week in one city at one clinic, creating 35-foot buffer zones at every clinic across the Commonwealth is hardly a narrowly tailored solution." 573 U.S. at 493; *see also* Dkt. 5, Pls' Memorandum p. 17. However, this statement does not apply to the Ordinance at issue. First, the Ordinance is a local ordinance to address a local problem. Second, the Ordinance does not automatically create buffer zones outside of every healthcare facility. And third, the Ordinance creates a small, 10-foot buffer zone, not a 35-foot buffer zone. Plaintiffs' reliance on this one sentence is a stretch at best to say the Ordinance is geographically overbroad. To date, EMW Clinic is the only clinic that has requested demarcation lines to create a buffer zone.

**B.** *Hill v. Colorado* **has Precedential Value.**

Plaintiff's allege that *Hill v. Colorado* has no precedential value because the law at issue involved a "eight-foot bubble zone- within a 100-foot buffer zone" which is remarkably different than the ten-foot fixed buffer zone at issue here. *See* Dkt. 5, Pls' Memorandum p. 19. Plaintiffs' also allege that the Ordinance more similarly resembles the 35-foot buffer zone in *McCullen* rather than the eight-foot bubble zone in *Hill*. *Id*. at p. 20.

The statute in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person. 530 U.S. at 703. Plaintiffs here allege that because the law in Hill stated, "unless such other person consents" and the Ordinance does not, the two laws are not comparable, and *Hill* has no precedential value. This argument is absurd because the Ordinance allows for sidewalk counselors and protestors to be heard from at least five feet away if not closer. If a patient wants to engage, they may engage and do not need permission from the Ordinance. The patient can walk a few feet and step out of the buffer zone.

Further, to argue that the ten-foot buffer zone resembles the 35-foot buffer zone in *McCullen* more so than the eight-foot "bubble" zone in *Hill* is also absurd. The only difference between the buffer zone and the bubble zone, is that the bubble zone moves throughout the 100-foot buffer zone and prohibits anyone from approaching within eight feet- which is more restrictive than the Ordinance.

Metro Government reiterates that the *McCullen* plaintiffs, as sidewalk counselors, had no issues with the 2000 Massachusetts's law prohibiting knowingly approaching others **within six feet**. It was only after the creation of a 35-foot buffer zone that their speech was substantially burdened.

**C. The Ordinance is not Unconstitutionally Vague.**

Plaintiffs allege that the Ordinance is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment because the Ordinance does not 1.) define how or when a buffer zone is enforceable; nor 2.) address whether Plaintiffs are permitted to cross through the buffer zone to get to the other side. *See* Dkt. 5, Pls' Memorandum p. 21.

The Sixth Circuit found that "[r]egarding vagueness, it is well established that " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process law.'" *United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012) (citing *Ass'n. of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 551 (6th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1925)).

However, "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise." *United States v. Harriss*, 347 U.S. 612, 618 (1954) (citing *United States v. Petrillo*, 67 S.Ct. 1538, 1541 (1877). "And if this general class of offenses can be made constitutionally definite by a reasonable

construction of the statute, this Court is under a duty to give the statute that construction." *Id*. at 618.

Plaintiffs argue that the Ordinance is vague because the Ordinance fails to provide "how, or when, buffer zones are made operational, i.e., enforceable." *See* Dkt. 5, Pls' Memorandum p. 22. However, Plaintiffs' allegations simply are not true.

> 1. Section B(1) states: **No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a "buffer zone"** on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, **during the facility's posted business hours**. (emphasis added).

> 2. Section (E) states, "Any health care facility that **requests that the Louisville Department of Public Works paint or lay demarcation lines** as described in subsection (C)(1), shall monitor during its hours of operation **the "buffer" zone created by the demarcation lines**…" (emphasis added).

The plain language of the Ordinance is clear and unambiguous: a "buffer" zone is created via painted demarcation lines, which must be requested by the health care facility from the Louisville Department of Public Works. Once a "buffer" zone is created by the demarcation lines, the Ordinance is enforced during the healthcare facilities posted business hours.

Additionally, despite Plaintiffs' unrealistic hypotheticals, the Ordinance has only been requested at the EMW Center given the unique and long history of violence and harassment at this location. The Supreme Court is clear that laws may only be invalidated if the overbreadth is substantial and a there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (citing *Eurozone v. City of Jacksonville*, 422

U.S. 205 (1975); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978); Parker v. Levy, 417 U.S. 733, 760–61, (1974)); *See also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992).

Plaintiff further alleges that Section B(2)(b) of the Ordinance is unconstitutionally vague. Section B(2)(b) states:

> "No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a "buffer zone" on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and ten feet from side to side, during the facility's posted business hours, except:
> (b) Persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

Plaintiffs allege that this section is unconstitutionally vague because they are unsure if they can walk through the buffer zone to get the sun out of their eyes. *See* Dkt. 5, Pls' Memorandum p. 25. However, it is not the buffer zone language that is vague- the language is clear. No person shall knowingly enter the buffer zone unless the sole purpose is "reaching a destination other than such facility." Thus, if the person is not walking to a different destination, they are prohibited, by the Ordinance, from entering the buffer zone. Further, walking around the buffer zone to get to the other side is no burden to Plaintiffs. Hypotheticals are not enough to invalidate an ordinance for vagueness. Given a reasonable construction of the Ordinance, which is the duty of the court, the Ordinance is constitutionally definite. *Harris*, 347 U.S. at 618.

2. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE INJURY

Plaintiffs allege Metro's Ordinance violates their First and Fourteenth Amendment rights, both facially and as applied, by preventing Plaintiffs from walking alongside of people entering and exiting healthcare facilities.

However, Plaintiffs fail to show an actual injury or imminent injury with proper causation under the Ordinance for their allegations. Plaintiffs allege the Ordinance will limit Plaintiffs ability to reach patients entering and exiting the healthcare facilities and thus their ability to prevent legal abortions. Courts have already upheld that ordinances of this size and larger do not substantially restrict a speaker's ability to be heard, but it does protect unwilling listeners. *Hill*, 530 U.S. at 716. Plaintiffs have provided zero evidence that the Ordinance has effects on willing listeners since Plaintiffs can still be seen, heard and distribute leaflets. Further Plaintiffs have provided absolutely no evidence that walking alongside a patient entering a healthcare facility is productive. In fact, the legislative record suggests that patients view this as stalking and harassment.

Plaintiffs cannot demonstrate irreparable injury. Irreparable injury is characterized as both "certain and great." *See City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 1101 (W.D. Mi. 1977). This has not been demonstrated here and therefore Plaintiffs' Motion fails.

3. REMAINING ELEMENTS FOR INJUNCTIVE RELIEF CANNOT BE SATISFIED.

The third factor the court must look to when considering a Motion for Preliminary Injunction is whether injunction may cause substantial harm to others. *American Civil Liberties Union of Michigan v. National Security Agency/Central Security Service*, 467 F.3d 590, 591 (6th Cir. 2002). In arguments addressing the merits of Plaintiffs' claims, it is clearly demonstrated that injunction opens doors for more harm to occur to patients entering and exiting healthcare facilities. Plaintiffs have already stated that they refuse to abide by the Ordinance and intend to

violate it regularly. If granted injunctive relief, Plaintiffs and protestors, specifically right-wing protestors, will feel more empowered than ever to continue the harassment, assaults, stalking and intimidation of patients. This would amount to substantial harm to others.

In a similar way, injunction would not satisfy the fourth and final element of the remedy, whether injunction would serve the public interest. *Id*. It goes without saying that stalking, harassment, assault and intimidation against vulnerable individuals does not serve the public interests. As a result, Plaintiffs' Motion should fail.

## VI. CONCLUSION

Metro Government is only required to not burden substantially more speech than necessary to serve such its significant interests. Here, the subject Ordinance places a very minimal burden, if any, on Plaintiffs ability to communicate with patients outside of healthcare facilities while simultaneously protecting patients, protestors and free speech and removing some burden from LMPD.

In fact, to reiterate, the Plaintiffs in *McCullen*, sidewalk counselors, were only burdened by the 35-foot buffer zone and had no issues with the six-foot radius buffer zone, which is more restrictive than the buffer zone created by the Ordinance. Additionally, the plain language of the Ordinance is clear and unambiguous. Any confusion is from Plaintiffs only and not from "men of common intelligence" which is required by law. Lastly, Plaintiffs have failed to articulate any irreparable harm caused by the buffer one which is the heart of injunctions. For these reasons, Plaintiffs' Motion for a Preliminary Injunction should be denied.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY: __/s/ Natalie Johnson_____
      NATALIE JOHNSON
      JOHN F. CARROLL
      Assistant County Attorneys
      First Trust Centre
      200 S. 5th St. Suite 200N
      Louisville, KY  40202
      Phone: (502) 574-4307
      Natalie.johnson@louisvilleky.gov
      John.Carroll2@louisvilleky.gov
      *Counsel for Defendant Louisville/Jefferson*
      *County Metro Government*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Defendant's Response In Opposition to Plaintiffs' Motion For Preliminary Injunction was served via the Court's CM/ECF system on the __9th__ day of December 2021, to:

Francis J. Manion
Geoffrey R. Surtees
American Center for Law and Justice
P.O. Box 60
New Hope, KY 40052
(502) 549-7020
fmanion@aclj.org
gsurtees@aclj.org
*Counsel for Plaintiff*

*A copy was also provided via email to:

Christopher Wiest
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Ste 104
Crestview Hills, KY 41017
chris@cwiestlaw.com
*Counsel for Plaintiffs,*
*Sisters for Life, et al.*

Thomas Bruns
4750 Ashwood Dr. Ste, 200
Cincinnati, OH 45241

tbruns@bcvalaw.com
*Counsel for Plaintiffs,*
*Sisters for Life, et al.* in W.D. Ky. Case No. 3:21-cv-00367-RGJ


   /s/ Natalie Johnson      
Natalie Johnson