# MEMORANDUM
## LOUISVILLE METRO POLICE DEPARTMENT

**GREG FISCHER**
MAYOR

**ERIKA SHIELDS**
CHIEF OF POLICE

**TO:** Major Matt Meagher
First Division Commander

**FROM:** Lieutenant Caleb Stewart
Downtown Area Patrol Commander

**DATE:** March 24, 2021

**RE:** EMW Clinic

On Saturday, March 20, 2021, Sergeant Christina Beaven, Officer Jennifer Del Valle and Officer Brigid Christiansen were detailed to observe and take appropriate action directly outside and the area surrounding the EMW Women's Surgical Center located at 136 W. Market Street in Louisville, Kentucky. There are members of the community that regularly gather outside of the EMW Clinic in opposition to the procedures that take place inside. There has been concern that the actions of these protestors goes beyond that which is protected by law, primarily the First Amendment to the U.S. Constitution. The specific concerns raised are that the protestors are at times guilty of the following KRS and Louisville Metro Ordinance violations: KRS 525.070 Harassment, KRS 512.080 Unlawfully Posting Advertisements, LMCO 132.03 Disorderly Conduct, LMCO 97.072 Blocking Sidewalks, LMCO 99 Noise, LMCO 71.10 Prohibited Pedestrian Activities on Arterial Roadways, Medians, and Gores, LMCO 155.23 Placement (of Signs). The members of the Louisville Metro Police Department assigned to this detail were instructed to specifically watch for the aforementioned violations.

The LMPD members arrived on the scene at 0700 and remained until approximately 1030. They positioned themselves directly across Market Street from the EMW Clinic to provide an optimal view of the area. While on scene, Sergeant Beaven activated her WVS eight times to capture what was taking place. She also narrated while her WVS while activated to provide context to the recording as well as explain what she was observing. These WVS activations provide a picture of what was taking place outside 136 W. Broadway on March 20, 2021.

# MEMORANDUM
**LOUISVILLE METRO POLICE DEPARTMENT**

**GREG FISCHER**
MAYOR

**ERIKA SHIELDS**
CHIEF OF POLICE

While Sergeant Beaven was working this detail, she contacted her immediate supervisor, Lieutenant Caleb Stewart, by phone to report some of her observations and to get clarification related to enforcement action.  The activity and actions of the protestors that were communicated to Lieutenant Stewart by Sergeant Beaven did not warrant enforcement action based on current understanding of KRS, LMCO, and LMPD common practices.  For example, Sergeant Beaven asked if the subject utilizing the microphone with amplifier (or similar device) should be charged with a violation of LMCO 99, which is the noise ordinance.  There are three primary reasons that Lieutenant Stewart instructed Sergeant Beaven to not take enforcement action regarding the noise.  First, the freedom of speech is the first of the amendments to the U.S. Constitution and taking enforcement action against a person for standing on public sidewalk and "proselytizing", as Sergeant Beaven described his speech, seems to get very close to depriving a person of his or her First Amendment rights.  Sergeant Beaven has even been in contact with a legal expert who advised that enforcement action should not be taken against someone speaking in a public place even if it is done is such a manner in which the sound can be plainly heard more than fifty feet from the point of origination.  Second, this type of behavior has regularly been allowed even in instances where LMPD has been present.  It is not uncommon for individuals to utilize a loudspeaker or microphone with amplifier around Churchill Downs during derby events speaking in a similar manner as the individual outside of the EMW Clinic.  To my knowledge, there has never been enforcement action taken.  Also, it is not uncommon for individuals to utilize bull horns at Jefferson Square to speak a message, that typically includes expletives, that can be heard a few blocks away.  Again, to my knowledge, there has never been enforcement action against those individuals because it has been deemed free speech. Lastly, the noise ordinance is not clear that speaking in public, no matter how loud, is a violation.  It provides seven specific examples of violations, but speech coming from someone on a sidewalk is not included.  Most of the examples include noise coming from a vehicle, whether it be a horn, music, or exhaust system.  If enforcement action needs to be taken for this type of behavior, I suggest there be clear communication from the Legal Advisor that it is not protected under the First Amendment and from Chief's Office that going forward it should be enforced on a consistent basis.

Sergeant Beaven also observed the protestors utilizing signs while on the sidewalk.  From my understanding of KRS and LMCO, this would only be a violation if the signs were "affixed" to public or private property without permission, or if they were set up in such a way as to block the sidewalk.  Sergeant Beaven clearly states on her WVS recordings that the signs utilized by the protestors were not blocking the sidewalk.  She even activated her WVS on at least two occasions

# MEMORANDUM
**LOUISVILLE METRO POLICE DEPARTMENT**

**GREG FISCHER**
MAYOR

**ERIKA SHIELDS**
CHIEF OF POLICE

to show a clients being escorted down the sidewalk and into the EMW Clinic without being hindered by signs. There were some signs that appear to have been brought by the protestors that were leaning up against a fire hydrant and another that appeared to be a sandwich board-type sign. Again, Sergeant Beaven was instructed to not take enforcement action because it does not appear that either of these instances meets the definition of a sign being affixed to property.

Sergeant Beaven also observed some of the protestors following a client who was being escorted down the sidewalk and into the clinic. There were no observations made of protestors physically blocking the sidewalk. The protestors captured on WVS following the client appeared to be following at a distance of about five feet. It has been observed in the past and assumed that the protestors were attempting to talk the client out of entering the clinic. Once again, this seems to be activity and speech that is protected and not rising to the level of harassment.

There will be LMPD personnel conducting a similar detail at this location each Saturday morning for at least the next few weeks.

In conclusion, it seems that most of the activity of the protestors is clearly lawful. There is some activity that could be interpreted as violations of city ordinances or perhaps KRS, but it is a very fine line and clarification needs to be provided if it is deemed that enforcement action is appropriate.

cc: Chief Erika Shields, Chief of Police
    Colonel Jacquelyn Villaroel, Deputy Chief of Police
    Lieutenant Colonel Josh Judah, Patrol Bureau Commander